11th Court of
Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Gregory Scott McCracken

Appellant

Vs.                   No. 11-02-00049-CR -- Appeal
from Harris County

State of Texas

Appellee

 

The jury convicted Gregory Scott McCracken of
burglary of a habitation with intent to commit theft.  The trial court found that the allegation of one prior felony
offense was true and assessed his punishment at confinement for 15 years.   We affirm.

                                                                  Issues
Presented

Appellant presents two points of error.  First, he argues that the evidence was Alegally insufficient@ to support his conviction
for burglary of a habitation.  Then, he
argues that the evidence was Afactually
insufficient@ to
establish his guilt beyond a reasonable doubt.

                                                                   The
Indictment

The indictment charged that, on or about June 18,
2000, appellant unlawfully entered a habitation owned by Kenneth Ellis Brown
with the intent to commit theft.  The
indictment also alleged a final conviction in 1994 for burglary of a
habitation.

                                                        Sufficiency
of Evidence Tests

Appellant=s
claim that the evidence is Alegally
insufficient@ has been
reviewed under the test stated in Jackson v. Virginia, 443 U.S. 307, 318
(1979).  Appellant=s claim that the evidence
is Afactually
insufficient@ has been
reviewed under the tests stated in Clewis v. State, 922 S.W.2d 126, 129
(Tex.Cr.App.1996).  The jury is Athe exclusive judge@ of the facts proved and of
the weight to be given to the testimony. 
See Bowden v. State, 628 S.W.2d 782, 784 (Tex.Cr.App.1982), where the
court said:








Appellant=s
challenge to the sufficiency of the evidence is based on argument that [the
State=s witness] is
the only one who identified him...and that there were some inconsistencies
between [that witness=s]
trial testimony and the description he gave the police.

 

                                                           *    *   
*

 

The appellant argues that these
inconsistencies...render the evidence insufficient to support the
conviction.  We do not agree.  The inconsistencies or conflicts between
[the officer=s report]
and [the witness=s]
trial testimony were all before the jury, who were the judges of the facts, the
credibility of the witnesses, and the weight to be given to the testimony.   The jury may believe some witnesses and
refuse to believe others, and it may accept portions of the testimony of a
witness and reject other portions. 
(Citations omitted; Emphasis added)

 

                                                        Evidence
of Appellant=s
Guilt

There was testimony by Kenneth Ellis Brown that he
did not know appellant and that he had not given appellant permission to enter
his house.  Brown said that he had hired
Robert Thomas Reynolds, a carpenter, to renovate the house.  

Robert testified that he was using tools which
belonged to Brown and that the tools were missing on June 18, 2000.  Robert said that he had left two of the
tools locked in a little building behind the house and that he had left the
rest of the tools locked inside the house when he left the house on June
16.  Robert testified that there was Apower in the house@; there was Arunning water@; and Aeverything in the bathroom
worked.@  

Jean Reynolds said that she and her daughter went
by the house while her husband was gone. 
She said that something was Anot
right,@ and they
left.  She and her brother went back to
the house the next day.  They went to
the back door.  Her brother went into
the house first, and she followed him. 
They found a man who was sleeping on the couch, and her brother asked
the man what he was doing there.  Jean
was there when the man stood up.  She
said that he was Ashocked...from
being woke up@ and
that he Astood there
and wobbled a little bit.@   She went to the neighbor=s house to call the
police.  When she got back to the house,
the man who had been sleeping on the couch was gone.  Jean=s
testimony on the identification of appellant as the man who was in the house
reads in relevant part as shown:

Q: Were you there long enough to identify the
person that was on the scene? 

 

A: Yes, sir, I do not forget faces.








Q: Is that person here in the courtroom today?

 

A: Yes, sir.  [Then she
identified appellant as the man who was in Brown=s
house.]

 

On cross-examination, Jean said that she did
not see any tattoos or deformities on the man. 
She also agreed that she wears glasses and that she was not wearing
glasses that day.

Herbert James testified that
Jean is his sister; that he went with her on June 18 because she thought
somebody had broken into the house where her husband had been working; and that
she wanted him to go with her to see if anybody was there.  He opened the back door, and they went into
the house.  They found a person lying on
the couch who should not have been there. 
James said the man was asleep and that he was covered with
curtains.  James woke the man by yelling
at him, and the man jumped up.  The man
was standing there in his underwear, and he asked if he could go to the bathroom.  Then the man escaped out the bathroom
window.  James said that he got a Agood look@ at the man.  James said that later he went to the police
station in Pasadena and picked appellant=s
photograph out of a six-picture photographic array.  James testified that the person he saw in the house on June 18
was in the courtroom, and he identified appellant as the man he had seen in the
house.  On cross-examination, James
agreed that he did not see appellant=s
tattoo or his deformity when he saw the man in Brown=s house. 
James said that he did not recall Aever
expressing any uncertainty to any police officer investigating this case as to
whether@ he would be
able to identify the person he saw in the house.  The police report indicated that James had expressed uncertainty
as to whether or not he would be able to identify the man he saw in the house.

Employees of two different
pawn shops identified appellant as the man who had pawned the tools and
equipment which had been taken from Brown=s
house and shed.  Appellant=s sworn statement to the
police was admitted into evidence along with evidence which rebutted his claim
that he had bought the stolen items which he pawned.  That evidence showed that: 
(1) Robert had been using the equipment after the time that appellant claimed
to have bought the equipment; and (2) the man that appellant claimed had sold
him the equipment said that he had not sold the equipment to appellant.

                                        Inconsistencies
in Evidence of Guilt








The record shows that appellant had a tattoo and a
physical deformity which neither eyewitness saw.  The pants which were found in the house appeared to be for a
larger man, and Jean was not wearing her glasses when she saw the man who
escaped.  Officer Mick Scott agreed that
his police report showed that James, one of the eyewitnesses, told him during
the investigation that James Awas
unsure if he could identify the suspect if he saw him again.@  The police report by Officer Scott did not indicate whether the
other eyewitness had seen the person inside the house.

                                                                This
Court=s Ruling

The jury was the Aexclusive
judge@ of the facts
proved and of the weight to be given to the testimony.  The jury resolved the conflicts in testimony
by accepting the eyewitnesses=
positive identifications of appellant as the man they found asleep on the couch
in Brown=s house.  Bowden v. State, supra.  The evidence is both Alegally sufficient@ and Afactually
sufficient@ to support
the jury=s finding
that appellant was guilty of burglary of a habitation with intent to commit
theft.  Jackson v. Virginia, supra;
Clewis v. State, supra.  Points of Error
Nos. 1 and 2 are overruled.

The judgment of the trial court is affirmed.

 

BOB DICKENSON

SENIOR JUSTICE

February 6, 2003

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Arnot, C.J., and

McCall,
J., and Dickenson, S.J.[1]











[1]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.